**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **INTEGRATE.COM, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **PAUL NOONAN and DENNIS JOSEPH,** | ) | **Judge** |
| | ) | |
| **Defendants.** | ) | |

**VERIFIED COMPLAINT FOR EMERGENCY, TEMPORARY, AND PRELIMINARY
INJUNCTIVE RELIEF, DAMAGES, AND DECLARATORY JUDGMENT**

Plaintiff Integrate.com, Inc. ("Integrate"), files this Verified Complaint against Defendants Paul Noonan ("Noonan") and Dennis Joseph ("Joseph") (collectively, "Defendants") to obtain emergency, temporary, and preliminary injunctive relief for Defendants' breaches of their contractual and fiduciary obligations to their former employer, Integrate. Integrate also seeks damages in connection with Defendants' tortious interference with Integrate's business relationships and expectancy.

Integrate asserts claims for: (1) Defendant Noonan's Breach of Contract; (2) Defendant Joseph's Breach of Contract; (3) Defendants Noonan's and Joseph's Actual and Threatened Misappropriation of Trade Secret Information Under Federal Law (Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*); (4) Defendants Noonan's and Joseph's Actual and Threatened Misappropriation of Trade Secret Information Under Illinois Law (Illinois Trade Secrets Act, 765 ILCS 1065, *et seq.*); (5) Defendants Noonan's and Joseph's Actual and Threatened Misappropriation of Trade Secret Information under Arizona Law (Arizona's Uniform Trade Secrets Act, A.R.S. § 44-401, *et seq.*); and (6) Defendants Noonan's and Joseph's Tortious Interference with Business Relationships and Expectancy.

## THE PARTIES

1.      Integrate.com, Inc., is a Delaware corporation, with its principal place of business in Arizona.

2.      Noonan is an individual who was employed by Integrate from September 7, 2016, through March 3, 2023. Noonan resides and is domiciled at 1838 N. Fairfield Ave., Chicago, Illinois 60647.

3.      Joseph is an individual who was employed by Integrate from August 13, 2018, through April 28, 2023.  Joseph resides and is domiciled at 1630 Ferndale Ave., Northbrook, IL 60062.

## JURISDICTION AND VENUE

4.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity between Integrate and Defendants and the amount in controversy in this dispute exceeds $75,000.00, including the value of the conduct Integrate seeks to restrain Defendants via injunctive relief.

5.      This Court also has original jurisdiction over this action under 28 U.S.C. § 1331 because Integrate asserts a claim against Defendants for violation of a federal statute – the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq*.

6.      Integrate's related state-law claims fall within this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

7.      This Court has personal jurisdiction over Defendants, and venue is proper in this District under 28 U.S.C. § 1391(a), because Defendants reside and are domiciled in this judicial district, they committed and continue to commit tortious acts in, and/or related to, this judicial

2

district, and all or a substantial part of the events giving rise to Integrate's claims occurred within this district.

## FACTUAL BACKGROUND

### Integrate and the Competitive
### Business-to-Business Marketing Industry

8.      Integrate is a marketing automation platform for business-to-business marketers (sometimes referred to as "B2B marketing"). Integrate enables it customers to generate leads from its network of publishers through content marketing programs.

9.      Integrate provides its customers two main services: (1) software as a service ("SaaS") and (2) the Integrate Marketplace.

10.     Integrate's SaaS enables its customers to subscribe to Integrate's platform where customers can designate the publishers that are going to generate the leads that will be processed by the Integerate SaaS platform. In other words, the customer chooses the publishers that are going to generate leads. In this model, the publishers are paid directly by the customer for the leads that are generated.

11.     When using the Integrate Marketplace, customers do not select the publishers to generate leads, but rely on Integrate to select the publishers. In this model, the customer makes payments to Integrate, who then makes payment to the publishers.

12.     Digitalzone has worked as a publisher with Integrate in both the SaaS and Marketplace models, but is currently only utilizing the SaaS model.

13.     Digitalzone entered the B2B marketing industry in 2020, and has since operated as a direct publisher.

14.     Digitalzone was an Integrate Marketplace publisher from 2017 to 2022.

15.     Digitalzone has been a SaaS publisher starting on or about May, 2020 and continues to be one currently.

16.     Outside of working with Integrate, Digitalzone is a publisher that works directly with businesses looking to generate leads in the B2B marketing industry.

17.     Digitalzone has always been a direct competitor of the Integrate Marketplace and if Digitalzone was able to connect with the contacts at Intgrate's customers, Digitalzone could attempt to bypass Integrate and obtain the contracts directly.  It is for this reason that the contact information of Integrate's customers are never disclosed to the Integrate Marketplace publishers and why Integrate treats that information as confidential information.

**Integrate's Significant Protectable**
**Interests in Goodwill and Confidential Information**

18.     By creating, nurturing, and maintaining goodwill with its current and prospective customers, Integrate is better able to compete and maintain its standing in the market. Among competing companies with similar products and services, the maintenance and protection of the relationships and goodwill that Integrate representatives build with current and prospective customers is crucial toward the continued viability of the company.

19.     Integrate has also assembled, developed, created, and maintained confidential and proprietary business information, including but not limited to: proprietary or customized software and databases; research and development; the Company's confidential records pertaining to its customers, including key customer contact information; contract terms and related information; confidential business opportunities; strategies for advertising and marketing; confidential business processes and strategies, including training, policies and procedures; product documents and forms; personnel composition (wages, specialization, etc.); and financial and revenue data and reports, including pricing, quoting and billing method.

20.     Integrate has also invested in electronic systems, procedures, and files to make sales, marketing, and service more efficient through technology—all of which the company provides to sales personnel to carry out their duties and establish and improve customer relationships.

21.     All of this information is confidential, proprietary, and not known outside the company, constitutes trade secret information, and is included within the definition of "Confidential Information" in the Agreements Noonan and Joseph signed with Integrate (as detailed below).

22.     The Confidential Information and trade secrets include:

- Contact information for decision-makers and influencers employed by customers and prospective customers;

- Specific information regarding the current needs and resources of current and potential customers as it relates to services provided by Integrate;

- Competitive information regarding competitors of Integrate's potential and current customers;

- Proprietary pricing lists for all of Integrate's current customers;

- Markup and other profit information about Integrate's customers;

- Information regarding the budgets for customers, former customers, and potential customers of Integrate as it relates to products and services provided by Integrate; and

- Other impressions and opinions of Integrate's representatives about current, former, and prospective customers.

23. All of the Confidential Information and trade secrets derive independent economic value because, among other things: (a) the information is not known to competitors; (b) Integrate has invested time, effort, and money in marketing, business development, engaging in targeted market research, and establishing industrial know-how to develop the Confidential Information and trade secrets; and (c) the Confidential Information and trade secrets enable Integrate to provide its customers with products and services that are more effective, efficient, and financially attractive than its competitors.

**Integrate's Reasonable Efforts to Protect
Confidential Information and Trade Secrets**

24. Integrate has taken and continues to take reasonable and appropriate steps to preserve the secrecy of its Confidential Information and trade secrets, including:

- Requiring employees to sign a confidential information and non-disclosure agreements as well as restrictive covenants;

- Addressing the importance of Confidential Information in the company's Handbook, including non-disclosure, and requiring all employees to review and abide by the policy.

- Requiring username and strong password access to its computers, systems, and Confidential Information and trade secrets; and

- Imposing additional restrictions and security on certain data, including accounting information, within the company's systems.

**Noonan's and Joseph's Agreements with
Integrate and Breaches of their Obligations to Integrate**

25. In or about November 2021, Integrate offered and Noonan and Joseph accepted new compensation packages in tandem with restrictive covenant agreements. True and correct

6

copies of Noonan's and Joseph's executed Integrate's Confidentiality and Restrictive Covenant Agreement are attached hereto as **Exhibit A and B** respectively, and are at times referred to herein as "Agreement(s)."  Integrate provided Noonan and Joseph valid consideration for the restrictive covenants contained in the Agreements including, without limitations, substantial increases in their six-figure compensation packages.

26.    Relevant provisions of the Agreements include the following:

**Non-Competition (§ 3.1)**. Employee agrees that during the Restricted Period and within the Restricted Geographic Area, Employee will not, directly or Indirectly, perform the same or similar responsibilities Employee performed for the Company in connection with a Competitive Product or Service. Notwithstanding the foregoing, Employee may accept employment with a Competitor whose business is diversified, provided that during the Restricted Period: (a) Employee will not be engaged in working on or providing Competitive Products or Services or otherwise use or disclose Confidential Information or Trade Secrets; and (b) the Company receives written assurances from the Competitor and Employee that are satisfactory to the Company that Employee will not work on or provide Competitive Products or Services, or otherwise use or disclose Confidential Information or Trade Secrets. In addition, nothing in this Agreement is intended to prevent Employee from investing Employee's funds in securities of a person engaged in a business that is directly competitive with the Company if the securities of such a person are listed for trading on a registered securities exchange or actively traded in an over-the-counter market and Employee's holdings represent less than one percent (1%) of the total number of outstanding shares or principal amount of the securities of such a person.

**Non-Solicitation and Non-Inducement of Customers (§ 3.2)**.  During the Restricted Period and in connection with a Competitive Product or Service, Employee shall not directly or Indirectly: (a) solicit or attempt to solicit any Customer; or (b) induce or encourage any Customer to terminate a relationship with the Company or otherwise to cease accepting services or products from the Company.

**Non-Solicitation and Non-Inducement of Employees (§ 3.3)**.  During the Restricted Period, Employee shall not directly or Indirectly: (a) solicit, recruit, encourage (or attempt to solicit, recruit or encourage), or assist others in soliciting, recruiting or encouraging, any Company employees or former employees with whom Employee worked, had business contact, or about whom Employee gained non-public or Confidential Information ("Employees or Former Employees"); (b) contact or communicate with Employees or Former

Employees for the purpose of inducing, assisting, encouraging and/or facilitating them to terminate their employment with the Company or find employment or work with another person or entity; (c) provide or pass along to any person or entity the name, contact and/or background information about any Employees or Former Employees or provide references or any other information about them; (d) provide or pass along to Employees or Former Employees any information regarding potential jobs or entities or persons for which to work, including but not limited to job openings, job postings, or the names or contact information of individuals or companies hiring people or accepting job applications; and/or (e) offer employment or work to any Employees or Former Employees. For purposes of this covenant, "Former Employees" shall refer to employees who are not employed by the Company at the time of the attempted recruiting or hiring, but were employed by, or working for the Company in the six (6) months prior to the Last Day. Employee agrees that while this duration of time is reasonable and serves the Company's legitimate business interests, if a court determines that this definition of Former Employees is overly-broad, "Former Employees" shall refer to employees who are not employed by the Company at the time of the attempted recruiting or hiring, but were employed by, or working for the Company in the three (3) months prior to the Last Day, If a court determines that this definition of Former Employees is overly-broad, it shall enforce the greatest time period it deems as reasonable to protect the Company's Confidential Information, Trade Secrets and the goodwill in its customers and employees.

**<u>Non-interference of Vendors and Suppliers (§ 3.4)</u>**.  Employee agrees that during the Restricted Period, Employee will not directly or Indirectly interfere with the Company's relationships with its vendors and suppliers in any manner that is prohibited by law.

**<u>Access and Use to Confidential Information and Trade Secrets (§ 4.1)</u>**. Employee expressly acknowledges and agrees that, by virtue of Employee's employment with the Company and exercise of Employee's duties for the Company, Employee will have access to and will use certain Confidential Information and Trade Secrets, and that such Confidential Information and Trade Secrets constitute confidential and proprietary business information and/or Trade Secrets of the Company, all of which is the Company's exclusive property. Accordingly, Employee agrees that Employee will not, and will not permit any other person or entity to, directly or Indirectly, without the prior written consent of the Company: (a) use Confidential Information or Trade Secrets for the benefit of any person or entity other than the Company; (b) remove, copy, duplicate or otherwise reproduce any document or tangible item embodying or pertaining to any of the Confidential Information or Trade Secrets, except as required to perform responsibilities for Company; and (c) while employed and thereafter, publish, release, disclose, deliver or otherwise make available to any third party any. Confidential Information or Trade Secrets by any communication, including oral, documentary, electronic or magnetic information transmittal device or media.

27.     The geographic scope of the non-compete and non-solicitation covenants in the Agreements is directly proportionate with Integrate's business and Noonan's and Joseph's responsibilities for the business, and their knowledge of Integrate's Confidential Information.

28.     The non-compete covenant in Section 3.1 is reasonable because it is narrowly tailored to allow Noonan and Joseph to work for a competitor provided they do not "perform the same or similar responsibilities Employee performed for the Company in connection with a Competitive Product or Service." *See* Exhibits A and B, § 3.1, p. 2.

29.     The customer non-solicit covenant in Section 3.2 is reasonable because it is narrowly tailored to prohibit only Noonan's and Joseph's solicitation of Integrate's customers whom Noonan and Joseph directly or indirectly "(a) provided products or services in connection with the Company's business; or (b) provided written proposals concerning receiving products or services from the Company." *See* Exhibits A and B, § 2.4, p. 2.

30.     The 12-month timeframe of the non-compete and non-solicitation covenants in the Agreements is reasonable in light of Integrate's unquantifiable investment of significant time and money in its business, Confidential Information, and its customers.  The 12-month timeframe is also well-within the limits recognized as reasonable under Arizona and Illinois law.

31.     The Agreements specify application of Arizona law (Exhibits A & B, § 16) and allow Integrate to seek injunctive relief to protect Integrate from the irreparable harm of Noonan's and Joseph's breaches of the Agreements:

> **Relief, Remedies and Enforcement (§ 9)**. Employee acknowledges and agrees that a breach of any provision of this Agreement by Employee will cause serious and irreparable injury to the Company that will be difficult to quantify and which may not be adequately compensated by monetary damages alone. In the event of a breach or threatened or intended breach of this Agreement by Employee, the Company shall be entitled to injunctive relief, including temporary, preliminary and final relief, enjoining and restraining such breach or threatened or intended breach. Employee further agrees that should Employee breach this Agreement, the Company will be entitled to any and all other legal or equitable remedies

available to it, including the recovery and return of any amount paid to Employee to enter into this Agreement, the disgorgement of any profits, commissions, or fees realized by Employee, any subsequent employers, any business owned or operated by Employee, or any of Employee's agents, heirs, or assigns. Employee shall also pay the Company all reasonable costs and attorneys' fees the Company incurred because of Employee's breach of any provisions of this Agreement.

**Noonan's and Joseph's Breaches
of their Agreements with Integrate**

32.     Noonan and Joseph violated their Agreements with Integrate by breaching the Non-Competition provision (§ 3.1), the Non-Solicitation and Non-Inducement of Customers provision (§ 3.2), the Non-Solicitation and Non-Inducement of Employees provision (§ 3.3), the Non-interference of Vendors and Suppliers provision (§ 3.4), and the Access and Use to Confidential Information and Trade Secrets provision (§ 4.1).

*Breaches of the Non-Competition Provision*

33.     The Agreements provide that Noonan and Joseph "will not, directly or Indirectly, perform the same or similar responsibilities Employee performed for the Company in connection with a Competitive Product or Service." *See* § 3.1 of the Agreements.

34.     The Agreements define "Competitive Product or Service" as "any product, process, system or service (in existence or under development) of any person or organization other than the Company that is the same as, similar to, or competes with, a product, process, system or service (in existence or under development) upon which Employee worked or had responsibilities at the Company during the twenty-four (24) months prior to the Last Day []." *See* § 2.2 of the Agreements.

35.     Digitalzone's primary business is to provide much of the same B2B marketing products and services that Integrate provides.

10

36.     Noonan's job title at the time he resigned from Integrate was "Account Director." As Account Director, Noonan was responsible for selling Integrate's Account Based Marketing (ABM) product suite.

37.     According to Noonan's Linkedin Page, Noonan now works for Digitalzone as a "Vice President of Sales." A true and accurate copy of Noonan's Linkedin Page is attached hereto as **Exhibit C**.

38.     Upon information and belief, as the title indicates, a "Vice President of Sales" sells Digitalzone's B2B marketing products and service, which are very similar to those sold by Integrate, to Digitalzone's potential clients.

39.     Therefore, Noonan breached of the Non-Competition provision of his Agreement when he began working for Digitalzone as a Vice President of Sales in March 2023, and he remains in breach of his Agreement.

40.     Joseph's job title at the time he resigned from Integrate was also "Account Director." As an Account Director, Joseph was responsible for selling Integrate's Account Based Marketing (ABM) product suite.

41.     Joseph's job title at Digitalzone is "Director of Sales" according to a May 22, 2023 email that Joseph sent from his Digitalzone email address to one of Integrate's current customers. A true and correct copy of Joseph's May 22, 2023 email is attached hereto as "**Exhibit D**".

42.     Joseph is performing the same responsibilities and working with the same products at Digitalzone as he did at Integrate. In his May 22, 2023 email to Integrate's current customer, **Joseph stated he "can deliver the same exact program I was running for you at Integrate . . ."** *See* **Exhibit D**.

43. By Joseph's very own admission, he is in breach of the Non-Competition provision of his Agreement.

44. Noonan's and Joseph's breaches of the Non-Competition provision of their Agreements were made knowingly and with the intent to steal Integrate's clients for themselves and Digitalzone.

*Breaches of the Non-Solicitation*
*and Non-Inducement of Customers Provision*

45. The Agreements provide that Noonan and Joseph "shall not, directly or Indirectly, (a) solicit or attempt to solicit any Customer . . ." that in the "twenty-four (24) months prior to their Last Day" to which they had "provided products or services" or "proposals."  *See* Exhibit A and B, § 3.2 and § 2.4.

46. Joseph openly breached the Non-Solicitation and Non-Inducement of Customers Provision when he emailed a current Integrate customer from his Digitalzone email address seeking Integrate's customer for Digitalzone.  *See* Exhibit D.

47. Joseph and Noonan each worked directly or indirectly with the customer Joseph solicited in his May 22, 2023 email.

48. Noonan has solicited Integrate's clients on his own and along with Joseph, constituting a breach of his Non-Solicitation and Non-Inducement of Customers provision.

49. According to Joseph's May 22, 2023 email, Joseph was excited to work with Noonan selling Digitalzone's products and "had to join his team," showing that Joseph is working with Noonan to solicit Integrate's customers.  *See* Exhibit D.

50. Moreover, Noonan has himself solicited and taken one of Integrate's customers that accounted for more than $1MM in business monthly to Integrate.

### *Breaches of the Access and Use of*
### *Confidential Information and Trade Secrets Provision*

51.     The Agreements provide that Noonan and Joseph agree that "by virtue of Employee's employment with the Company and exercise of Employee's duties for the Company, Employee will have access to and will use certain Confidential Information and Trade Secrets, [. . .], of which is the Company's exclusive property."  They further agreed that they will not: "(a) use Confidential Information or Trade Secrets for the benefit of any person or entity other than the Company; (b) remove, copy, duplicate or otherwise reproduce any document or tangible item embodying or pertaining to any of the Confidential Information or Trade Secrets, except as required to perform responsibilities for Company; and (c) while employed and thereafter, publish, release, disclose, deliver or otherwise make available to any third party any. Confidential Information or Trade Secrets by any communication, including oral, documentary, electronic or magnetic information transmittal device or media." *See* Exhibits A and B, § 4.1.

52.     Noonan and Joseph were not authorized to take, misappropriate, disclose, or harvest Integrate's Confidential Information and trade secrets. Noonan and Joseph engaged in improper means to acquire Integrate's trade secrets, including breaching their confidential relationship and duty of loyalty with Integrate as well as breaching § 4.1 of the Agreements.

53.     Noonan and Joseph have misappropriated and continue to misappropriate Integrate's Confidential Information and trade secrets for the purpose of undercutting Integrate's business and customer relationships for their own benefit and the benefit of Digitalzone.

54.     Joseph's May 22, 2023 email wherein he states he "can deliver the same exact program I was running for you at Integrate for $5-$10 less per lead" is direct evidence of Noonan's and Joseph's misappropriation of Integrate's Confidential Information and trade secrets, in the very way the restrictive covenants were legitimately designed to prevent.

55.     Integrate continues to investigate Noonan's and Joseph's breaches of the Confidential Information provision of their Agreements and expects that what it knows now is just the tip of the iceberg.

### Noonan's Breach of the Non-Solicitation and Non-Inducement of Employees Provision

56.     The Agreements provide that Noonan and Joseph "shall not directly or Indirectly (a) solicit, recruit, encourage (or attempt to solicit, recruit or encourage), or assist others in soliciting, recruiting or encouraging, any Company employees or former employees with whom Employee worked [. . .]." *See* Exhibits A and B, § 3.3.

57.     As Joseph put it in his May 22, 2023 email to Integrate's current customer, Joseph "couldn't resist and had to join [Noonan's] team."  Noonan's solicitation of Joseph to join Digitalize constitutes a breach of the Non-Solicitation and Non-Inducement of Employees provision in his Agreement.

### Integrate's Efforts to Make Noonan and Joseph Abide by Their Agreements Have Been Unsuccessful

58.     On March 14, 2023, soon after Noonan left Integrate to work for Digitalzone, Integrate sent Noonan a letter reminding him of his obligations to Integrate ("Reminder of Obligations to Integrate Letter").  A true and accurate copy is attached hereto as **Exhibit E**.

59.     Integrate's Reminder of Obligations Letter alerted Noonan that pursuant his Agreement, he was obligated to "keep all confidential information you learned of at Integrate confidential."  It also reminded him that he is "prohibited from soliciting Integrate's clients and/or employees for 12 months." *Id.*

60.     Noonan acknowledged receipt of the Reminder of Obligations to Integrate Letter in an email dated March 17, 2023.

61.     Nevertheless, Noonan disregarded Integrate's Reminder of Obligations to Integrate Letter and breached his Agreement in multiple ways.

62.     As soon as Integrate learned of Noonan's breaches, it sent him a Cease & Desist and Preservation Notice Letter ("Noonan Cease & Desist Letter") on May 24, 2023, via email and overnight Fedex. A true and accurate copy is attached hereto as **Exhibit F**.

63.     As soon as Integrate learned of Joseph's breaches, it sent him a Cease & Desist and Preservation Notice Letter ("Joseph Cease & Desist Letter") on May 24, 2023, via email and overnight Fedex. A true and accurate copy is attached hereto as **Exhibit G**.

64.     To date, Noonan and Joseph have not responded to Integrate's Cease & Desist Letters.

65.     As a result of the aforementioned conduct, Integrate has no adequate remedy at law, its damages cannot be quantified, and it is suffering and will continue to suffer irreparable harm, which requires emergency, temporary, and preliminary injunctive relief. Allowing Noonan's and Joseph's actions to go unchecked will give Noonan, Joseph, and anyone working concert with them an unfair advantage in the marketplace at Integrate's expense, including underbidding pricing and stealing Integrate's customers in violation of their Agreements.

66.     Integrate also has suffered injury in amounts difficult or impossible to ascertain.

## COUNT I

### AGAINST NOONAN
### FOR BREACH OF CONTRACT

67.     Integrate restates and realleges all the above paragraphs as if fully set forth herein.

68.     Under Noonan's Agreement, he is subject to valid and enforceable covenants prohibiting, for a period of twelve (12) months from the date of his termination of employment from Integrate, him from: (a) directly or indirectly perform the same or similar responsibilities he

performed with Integrate in connection with a Competitive Product or Service; (b) solicit and/or induce Integrate's customers; (c) solicit and/or induce Integrate's employees; or (d) use Integrate's Confidential Information or trade secrets for the benefit of any person or entity other than Integrate. *See* Exhibit A.

69.     Noonan received adequate and sufficient consideration for entering into the covenants set forth in his Agreement, including a pay increase and continued employment.

70.     Plaintiff has fulfilled all of its obligations under Noonan's Agreement.

71.     By agreeing to employment with Digitalzone in a similar capacity and providing similar services and products in the field of B2B marketing, Noonan is breaching the non-competition and non-disclosure covenants contained in Sections 3.1, 3.2 and 4.1 of his Agreement.

72.     Noonan also purposefully breached Section 3.3 of his Agreement when he solicited and induced Joseph to leave Integrate to work for Digitalzone.

73.     Noonan's breach and continuing breach of his covenants by working as Vice President of Sales at a direct competitor has caused and will cause Integrate immediate and irreparable harm without intervention from this Court.

74.     Integrate lacks an adequate remedy at law for Noonan's breaches.  In particular, Integrate is threatened with loss and damage to its customer relationships, its trade secrets and Confidential Information, and its goodwill, which would cause harm that cannot be rectified, and damages in amounts that may be impossible to determine, unless Noonan is enjoined and restrained by order of this Court.

75.     The damages caused by Noonan's breaches are impossible to quantify, but have already resulted in more than a million dollars of Integrate's B2B marketing business moving to

Digitalzone, as well as the loss of another employee, Dennis Joseph. Further damages will likely be incurred if his actions are not enjoined.

WHEREFORE, Plaintiff respectfully requests that the Court issue judgment in its favor and against Noonan for his breaches of his Agreement and award Plaintiff: (1) temporary, preliminary, and permanent injunctive relief restraining Noonan from further breaches of his Agreement; (2) all available damages to compensate Plaintiff for Noonan's breaches, including lost profits, compensatory damages, exemplary damages, punitive damages, and pre- and post-judgment interest, as allowed by law; (3) Plaintiff's reasonable costs and attorneys' fees incurred in this action; and (4) all other relief the Court deems appropriate.

## COUNT II

### AGAINST JOSEPH
### FOR BREACH OF CONTRACT

76. Integrate restates and realleges all the above paragraphs as if fully set forth herein.

77. Under Joseph's Agreement, he is subject to valid and enforceable covenants prohibiting, for a period of twelve (12) months from the date of his termination of employment from Integrate, him from: (a) directly or indirectly perform the same or similar responsibilities he performed with Integrate in connection with a Competitive Product or Service; (b) solicit and/or induce Integrate's customers; or (c) use Integrate's Confidential Information or trade secrets for the benefit of any person or entity other than Integrate. *See* Exhibit B.

78. Joseph received adequate and sufficient consideration for entering into the covenants set forth in his Agreement, including a pay increase and continued employment.

79. Plaintiff has fulfilled all of its obligations under Joseph's Agreement.

80. By agreeing to employment with Digitalzone in a similar capacity and providing similar services and products in the field of B2B marketing, Joseph is breaching the non-competition and non-disclosure covenants contained in Sections 3.1, 3.2 and 4.1 of his Agreement.

81. Joseph's breach and continuing breach of his covenants by working as Director of Sales at a direct competitor has caused and will cause Integrate immediate and irreparable harm without intervention from this Court.

82. Integrate lacks an adequate remedy at law for Joseph's breaches. In particular, Integrate is threatened with loss and damage to its customer relationships, its trade secrets and Confidential Information, and its goodwill, which would cause harm that cannot be rectified, and damages in amounts that may be impossible to determine, unless Joseph is enjoined and restrained by order of this Court.

83. The damages caused by Joseph's breaches are impossible to quantify, but have already resulted in more than a million dollars of Integrate's B2B marketing business moving to Digitalzone. Further damages will likely be incurred if his actions are not enjoined.

WHEREFORE, Plaintiff respectfully requests that the Court issue judgment in its favor and against Noonan for his breaches of his Agreement and award Plaintiff: (1) temporary, preliminary, and permanent injunctive relief restraining Noonan from further breaches of his Agreement; (2) all available damages to compensate Plaintiff for Noonan's breaches, including lost profits, compensatory damages, exemplary damages, punitive damages, and pre- and post-judgment interest, as allowed by law; (3) Plaintiff's reasonable costs and attorneys' fees incurred in this action; and (4) all other relief the Court deems appropriate.

## COUNT III

### AGAINST NOONAN AND JOSEPH FOR
### ACTUAL AND/OR THREATENED MISAPPROPRIATION
### OF TRADE SECRET INFORMATION

### (DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, ET SEQ.)

84. Integrate restates and realleges all the above paragraphs as if fully set forth herein.

85. Integrate's Confidential Information includes and constitutes trade secrets because Integrate derives independent economic value from the information, it is not generally known or readily ascertainable by proper means by other persons who could obtain economic value from its disclosure or use, and Integrate employs reasonable efforts to maintain its secrecy.

86. Integrate's trade secrets are related to its products and services used in, or intended to be used in, interstate or foreign commerce.

87. Integrate invested substantial time and expense in developing and maintaining its trade secrets and Confidential Information.

88. Integrate takes reasonable steps to protect and keep secret its trade secrets and Confidential Information, including but not limited to the use of password protection, the execution of confidentiality agreements, and restricting access to its systems.

89. Noonan and Joseph expressly acknowledged in Section 4.1 of their Agreements that by virtue of their employment with Integrate, they had access and used Integrate's Confidential Information and trade secrets.

90. Noonan and Joseph agreed that they would not use Integrate's Confidential Information for any other person or entity.

91. On information and belief, Noonan and Joseph took Integrate's Confidential Information including but not limited to specific, current customer information and pricing.

92.     They did so without Integrate's consent, in violation of the federal Defend Trade Secrets Act.

93.     Noonan's and Joseph's conduct also demonstrate they will inevitably disclose and misappropriate Integrate's trade secrets without its consent, in violation of the federal Defend Trade Secrets Act.

94.     Noonan and Joseph knew that they acquired, possessed, used, or disclosed Integrate's trade secrets in violation of the DTSA.

95.     Noonan's and Joseph's actual and threatened misappropriation of trade secrets has been willful and malicious.

96.     As a result of Noonan's and Joseph's acts as alleged herein, Integrate has suffered, and will continue to suffer irreparable harm, the extent of which may be impossible to ascertain.

97.     Integrate has no adequate remedy at law and needs emergency, temporary, and preliminary injunctive relief to stop Noonan's and Joseph's continuing irreparable harm to Integrate.

## COUNT IV

### AGAINST NOONAN AND JOSEPH FOR ACTUAL
### AND/OR THREATENED MISAPPROPRIATION OF TRADE SECRET INFORMATION

### (ILLINOIS TRADE SECRETS ACT, 765 ILCS 1065, ET SEQ.)

98.     Integrate restates and realleges all the above paragraphs as if fully set forth herein.

99.     Integrate's Confidential Information includes and constitutes trade secrets because Integrate derives independent economic value from the information, it is not generally known or readily ascertainable by proper means by other persons who could obtain economic value from its disclosure or use, and Integrate employs reasonable efforts to maintain its secrecy.

100.    Integrate invested substantial time and expense in developing and maintaining its trade secrets and Confidential Information.

101.    Integrate takes reasonable steps to protect and keep secret its trade secrets and Confidential Information, including but not limited to the use of password protection, the execution of confidentiality agreements, and restricting access to its systems.

102.    Noonan and Joseph expressly acknowledged in Section 4.1 of their Agreements that by virtue of their employment with Integrate, they had access and used Integrate's Confidential Information and trade secrets.

103.    Noonan and Joseph agreed that they would not use Integrate's Confidential Information for any other person or entity.

104.    As set forth above, Noonan and Joseph have taken Integrate's Confidential Information and have done so without Integrate's consent, in violation of the Illinois Trade Secrets Act.

105.    Noonan's and Joseph's conduct also demonstrate they will inevitably disclose and misappropriate Integrate's trade secrets without its consent, in violation of the Illinois Trade Secrets Act.

106.    Noonan and Joseph knew that they acquired, possessed, used, or disclosed Integrate's trade secrets in violation of the Illinois Trade Secrets Act.

107.    Noonan's and Joseph's actual and threatened misappropriation of trade secrets has been willful and malicious.

108.    As a result of Noonan's and Joseph's acts as alleged herein, Integrate has suffered, and will continue to suffer irreparable harm, the extent of which may be impossible to ascertain.

109. Integrate has no adequate remedy at law and needs emergency, temporary, and preliminary injunctive relief to stop Noonan's and Joseph's continuing irreparable harm to Integrate.

## COUNT V

### AGAINST NOONAN AND JOSEPH FOR VIOLATION OF ARIZONA UNIFORM TRADE SECRETS ACT

### (ARIZONA REVISED STATUTES, § 44-401 ET SEQ.)

110. Integrate restates and realleges all the above paragraphs as if fully set forth herein.

111. Integrate's Confidential Information includes and constitutes trade secrets within the meaning of A.R.S. §44-401(4) because Integrate derives independent economic value from the information, it is not generally known or readily ascertainable by proper means by other persons who could obtain economic value from its disclosure or use, and Integrate employs reasonable efforts to maintain its secrecy.

112. Integrate invested substantial time and expense in developing and maintaining its trade secrets and Confidential Information.

113. Integrate takes reasonable steps to protect and keep secret its trade secrets and Confidential Information, including but not limited to the use of password protection, the execution of confidentiality agreements, and restricting access to its systems.

114. Noonan and Joseph expressly acknowledged in Section 4.1 of their Agreements that by virtue of their employment with Integrate, they had access and used Integrate's Confidential Information and trade secrets.

115. Noonan and Joseph agreed that they would not use Integrate's Confidential Information for any other person or entity.

116.     As set forth above, Noonan and Joseph took Integrate's Confidential Information by without Integrate's consent, in violation of Arizona law.

117.     Noonan's and Joseph's conduct also demonstrate they will inevitably disclose and misappropriate Integrate's trade secrets without its consent, in violation of Arizona law.

118.     Noonan and Joseph knew that they acquired, possessed, used, or disclosed Integrate's trade secrets in violation of Arizona law.

119.     Noonan's and Joseph's actual and threatened misappropriation of trade secrets has been willful and malicious to Integrate's detriment.   Accordingly, Integrate is entitled to its reasonable attorneys' fees pursuant to A.R.S. §44-401(3) and exemplary damages under A.R.S. §44-403(B).

120.     As a result of Noonan's and Joseph's acts as alleged herein, Integrate has suffered, and will continue to suffer irreparable harm, the extent of which may be impossible to ascertain, and there is no adequate remedy at law.   Integrate needs emergency, temporary, and preliminary injunctive relief to stop Noonan's and Joseph's continuing irreparable harm to Integrate.

## COUNT VI

### AGAINST NOONAN AND JOSEPH FOR
### TORTIOUS INTERFERENCE WITH BUSINESS
### RELATIONSHIPS AND EXPECTANCY

121.     Integrate restates and realleges all the above paragraphs as if fully set forth herein.

122.     Integrate has longtime relationships with its customers such that, but for Noonan's and Joseph's wrongful conduct, it has a reasonable expectation of continued business with those customers.

123.     At all relevant times, Noonan and Joseph had knowledge of Integrate's relationships and reasonable expectancy of continued business with its customers.

124.    Integrate allowed Noonan and Joseph access to some of its customer relationships—including Confidential Information and trade secrets about those customers and relationships—for the purpose of advancing the company's interests and selling Integrate's products and services.

125.    Noonan and Joseph have purposefully and intentionally interfered, and will continue to do so, with Integrate's relationships and reasonable expectancy, and such interference has impaired and will impair Integrate's customer relationships and reasonable expectancy of continued business with customers.

126.    Noonan and Joseph have committed and are committing their unlawful conduct for the purpose of harming and injuring Integrate.

127.    Unless Noonan and Joseph are temporarily, preliminarily, and permanently enjoined from continuing their interference with Integrate's customers and reasonable expectancy of continued business, Integrate will continue to suffer irreparable harm that is impossible to quantify.

128.    Noonan's and Joseph's conduct has been willful, wanton, and malicious, entitling Integrate to an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A.    Enter a temporary restraining order, and preliminary and permanent injunction, against Noonan pursuant to Noonan's Agreement, the DTSA, the ITSA, Arizona's Uniform Trade Secrets Act, and the Court's inherent equitable powers:

(1) under Counts I, III, IV, and V, prohibiting Noonan from using, retaining, disclosing, or further misappropriating any of Integrate's Confidential Information and trade secrets;

(2) under Counts I, III, IV, and V, requiring Noonan (a) to immediately identify and return to Integrate any and all of Integrate's Confidential Information, trade secrets, data, files, records, property, and documents (in any form), together with all copies thereof, and any other material containing or disclosing such

material that Integrate has accessed, used, disclosed, or possessed in any form (paper or electronic), or that is stored on any system, account, or electronic device in  the possession, custody, or control of Integrate, Digitalzone, or any other person or entity acting in concert with him or with whom he is engaged in business or commerce who would benefit from the receipt and use of Integrate's Confidential Information and trade secrets and (b) to any person or entity acting in concert with him or with whom he is engaged in business or commerce who would benefit from the receipt and use of Integrate's Confidential Information and trade secrets;

(3) under Counts I, III, IV, and V, prohibiting Noonan from engaging in services and commercial activity, or holding a job, that is competitive with Integrate's products and services until the risk of actual, threatened, and inevitable disclosure of trade secrets is reasonably mitigated, including at least a period of no less than one year; and

(4) under Counts I, III, IV, and V, prohibiting Noonan from contacting, soliciting, or engaging with any Integrate customer or prospective customer assigned to Noonan or Joseph or with whom Noonan interacted or about whom Noonan obtained Confidential Information or trade secrets during his employment with Integrate until the risk of actual, threatened, and inevitable disclosure of trade secrets is reasonably mitigated, including at least a period of no less than one year; and

(5) under Counts I, III, IV, and V, requiring Noonan to provide a sworn statement that he has fully and completely complied with the Court's order(s) in this regard.

B.  Enter a temporary restraining order, and preliminary and permanent injunction, against Joseph pursuant to Joseph's Agreement, the DTSA, the ITSA, Arizona's Uniform Trade Secrets Act, and the Court's inherent equitable powers:

(1) under Counts II, III, IV, and V, prohibiting Joseph from using, retaining, disclosing, or further misappropriating any of Integrate's Confidential Information and trade secrets;

(2) under Counts II, III, IV, and V, requiring Joseph (a) to immediately identify and return to Integrate any and all of Integrate's Confidential Information, trade secrets, data, files, records, property, and documents (in any form), together with all copies thereof, and any other material containing or disclosing such material that Integrate has accessed, used, disclosed, or possessed in any form (paper or electronic), or that is stored on any system, account, or electronic device in  the possession, custody, or control of Integrate, Digitalzone, or any other person or entity acting in concert with him or with whom he is engaged in business or commerce who would benefit from the receipt and use of Integrate's Confidential Information and trade secrets and (b) to any person or entity acting in concert with him or with whom he is engaged in business or

commerce who would benefit from the receipt and use of Integrate's Confidential Information and trade secrets;

(3) under Counts II, III, IV, and V, prohibiting Joseph from engaging in services and commercial activity, or holding a job, that is competitive with Integrate's products and services until the risk of actual, threatened, and inevitable disclosure of trade secrets is reasonably mitigated, including at least a period of no less than one year; and

(4) under Counts II, III, IV, and V, prohibiting Joseph from contacting, soliciting, or engaging with any Integrate customer or prospective customer assigned to Joseph or Noonan or with whom Joseph interacted or about whom Joseph obtained Confidential Information or trade secrets during his employment with Integrate until the risk of actual, threatened, and inevitable disclosure of trade secrets is reasonably mitigated, including at least a period of no less than one year; and

(5) under Counts II, III, IV, and V, requiring Noonan to provide a sworn statement that he has fully and completely complied with the Court's order(s) in this regard.

C. Under Counts I, III, IV, and V, award Integrate all compensation Noonan has earned based on the misappropriation of Integrate's Confidential Information and trade secrets since quitting his job;

D. Under Counts II, III, IV, and V, award Integrate all compensation Joseph has earned based on the misappropriation of Integrate's Confidential Information and trade secrets since quitting his job;

E. Under Counts I, III, IV, V, and VI order Noonan to disgorge all ill-gotten profits and gains he earned through his tortious and unlawful conduct;

F. Under Counts II, III, IV, V, and VI order Joseph to disgorge all ill-gotten profits and gains he earned through his tortious and unlawful conduct;

G. Award Integrate compensatory damages, statutory damages, exemplary damages, punitive damages, and nominal damages from Defendants as may be proven at trial, including lost net revenues;

H. Award Integrate pre-judgment and post-judgment interest at the maximum rate allowed by law;

I. Award Integrate attorneys' fees and costs of suit herein, including costs for Integrate's forensic investigation; and

J. Award Integrate such other and further relief as this Court deems just and proper.

DATED:   MAY 26, 2023                                  Respectfully submitted,


                                                  By:   /s/ Thomas A. Lidbury
                                                        One of the Attorneys for Plaintiff
                                                        INTEGRATE.COM, INC.

Thomas A. Lidbury (ARDC No. 6211158)
Brady McMillin (ARDC No. 6341846)
**OGLETREE, DEAKINS, NASH,**
   **SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois 60606
Telephone:  312.558.1220
Facsimile:   312.807.3619
*thomas.lidbury@ogletree.com*
*brady.mcmillin@ogletree.com*

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, the undersigned, personally and/or in her capacity as a corporate representative for Integrate.com, Inc., verifies that the factual statements set forth in the foregoing Verified Complaint are true and accurate, except as to matters therein stated to be on information and belief or clearly attributed to another person. To the extent factual statements herein are based on the undersigned's personal knowledge, she knows that they are true and accurate to the best of her knowledge. To the extent factual statements herein are based on statements that have been told to the undersigned by others, she believes them to be true and accurate and has reason to do so. To the extent factual statements herein are based on statements that have been told to the undersigned by other employees or agents of Plaintiff, the undersigned believes them to be true and accurate and has reason to do so. The undersigned declares under penalty of perjury and the laws of the United of America that the foregoing is true and accurate.

INTEGRATE.COM, INC.

By: _____

Name: _____Eric Krich_____

Title: ___VP, legal and Privacy_____

Dated: ___May 26, 2023_____